UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICK BUNCH, | |
| Plaintiff, | Case No. 3:18-cv-00760 |
| v. | Chief Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| CPL. CLARK SARGENT, et al., | |
| Defendants. | |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

This pro se civil rights action brought under 42 U.S.C. § 1983 arises out of Plaintiff Patrick Bunch's pretrial detention in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee. (Doc. No. 1.) Bunch alleges that Defendants Corporal Clark Sargent, Corporal Kimberleigh Spohn, Corporal Christian Johnson (C. Johnson), Lieutenant Kevin Cole, and Chief Jamie Johnson (J. Johnson) used excessive force against him in violation of his constitutional rights when they broke up a fight between Bunch and another detainee in April 2018. (*Id.*) Defendants Sargent, Spohn, C. Johnson, Cole, and J. Johnson have filed a motion for summary judgment, supported by a memorandum of law, a statement of undisputed material facts, and several exhibits. (Doc. Nos. 45–47.) Bunch has filed a response (Doc. No. 53), to which the defendants have replied (Doc. No. 54). Bunch also filed a surreply without permission from the Court. (Doc. No. 55.) Upon consideration of the record evidence as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motion and enter summary judgment in their favor.

# I.      Background

## A.      Factual Background[1]

The events underlying Bunch's claims took place on April 23, 2018, inside the Davidson County Maximum Correctional Center, where Bunch was detained pending trial on state criminal charges. (Doc. Nos. 45-2, 47.) Bunch states that he had been watching television in the common area of his housing pod when another detainee named Deangelo Fisher approached him and began arguing with Bunch about the television channel. (Doc. No. 45-1.) Fisher jumped on a stool to reach the television and unplugged it before walking away. *Id.*) Bunch plugged the television back in and Fisher walked back toward him, climbed on a stool, and "got aggressive to[ward]" Bunch. (*Id.* at PageID# 203.) Bunch punched Fisher, and the two men began "scuffling" and "throwing punches" at each other. (*Id.* at PageID# 204, 205.)

Defendant Sargent states that he observed Bunch and Fisher exchanging punches and "called a Code Red over the radio[,]" which "alerts other officers to report to the pod for back-up."[2] (Doc. No. 45-2, PageID# 253, ¶ 8.) Sargent further states that he and Officer Austin Dale, who was also present, "commanded" Bunch and Fisher "to stop fighting[,]" but "[t]hey did not

---

[1]      The facts in this section are drawn from Bunch's verified complaint (Doc. No. 1), the defendants' summary judgment exhibits (Doc. Nos. 45-1–45-4), and the defendants' statement of undisputed material facts (Doc. No. 47). *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a verified complaint carries the same evidentiary weight as an affidavit for purposes of summary judgment).

[2]      Bunch testified that Officer Austin Dale was the only officer he recalled being present when the fight started. (Doc. No. 45-1.) However, after watching a video of the events in question, Bunch further testified that Dale and Sargent were the first officers on the scene. (*Id.*) There is no dispute that one of the officers called a code red. (Doc. Nos. 1, 45-2.) To the extent there is any dispute over who called the code red, the Court finds that such a dispute is not genuine or material for purposes of resolving the defendants' motion for summary judgment.

2

comply."[3] (*Id.*) Sargent and Dale then sprayed Bunch and Fisher with "several short bursts of a chemical agent (Freeze+P) and commanded them to stop fighting." (*Id.* at PageID# 253, ¶ 9.) Bunch states that, as he and Fisher "were fighting, [the officers] came in and sprayed, and then they said, y'all break it up . . . [a]nd then they sprayed again." (Doc. No. 45-1, PageID# 208.)

The parties give differing accounts of what happened next. Sargent states that Bunch and Fisher continued to fight even after being sprayed with chemicals and commanded to stop. (Doc. Nos. 45-2, 47.) Bunch states that he stopped fighting after the second round of chemical spray. (Doc. No. 45-1.) There is no dispute that Dale grabbed Fisher and pulled him away after Dale and Sargent sprayed Fisher and Bunch. (Doc. Nos. 45-1, 45-2.) Sargent states that "Dale managed to separate Mr. Fisher and get him to the ground because [Fisher] complied with the directives to stop resisting." (Doc. No. 45-2, PageID# 253, ¶ 13.) Sargent states that, unlike Fisher, "Bunch braced himself and widened his stance to resist [Sargent's] efforts to take him to the ground." (*Id.* at PageID# 253, ¶ 11.) Sargent further states that Bunch "continued to throw punches at Mr. Fisher[,] . . . ignore[d] [Sargent's] commands to stop resisting[,] . . . [and] kept trying to push through [Sargent] to continue the fight with Mr. Fisher." (*Id.* at PageID# 253, ¶¶ 12, 14; *see also* Doc. No. 47.) According to Sargent, Spohn arrived to assist him in restraining Bunch and "Bunch tried to push off the wall and turned to face [them] as [Sargent, Spohn, and Bunch] went to the floor." (Doc. No. 45-2, PageID# 253, ¶ 15.) Bunch states that he did not "push back off the wall" and that he was not resisting when Sargent, Spohn, and C. Johnson "slammed [him] down to the ground[.]" (Doc. No. 45-1, PageID# 212, 238.) Sargent insists that he and Spohn "did not slam Mr. Bunch to the floor." (Doc. No. 45-2, PageID# 253, ¶ 15; Doc. No. 47, PageID# 278, ¶ 6.)

---

[3]     The Court has dismissed Bunch's claims against Dale without prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b). (Doc. Nos. 1, 15, 24.)

3

Bunch states that he was not resisting after he reached the ground and that he could not move his arms because they were pinned underneath his chest. (Doc. Nos. 1, 45-1.) Bunch states that Sargent told him "to quit resisting" and Bunch said "I ain't resisting. I can't . . . move." (Doc. No. 45-1, PageID# 213.) Sargent states that Bunch resisted by using his hands to try to push off of the ground. (Doc. No. 45-2.) There is no dispute that Sargent hit Bunch several times while Bunch was on the ground. Bunch states that Sargent threw "a couple of punches to [Bunch's] face with his bare fist." (Doc. No. 45-1, PageID# 215.) Sargent states that, "[d]ue to the violence of the inmate fight, Mr. Bunch's refusal and resistance, and fear for [his] own safety, [Sargent] threw two closed fist strikes to Mr. Bunch's upper body area." (Doc. No. 45-2, PageID# 253, ¶ 16; *see also* Doc. No. 47.) According to Sargent, "[o]ne [strike] glanced off [Bunch's] shoulder and the other connected with his ear." (Doc. No. 45-2, PageID# 253, ¶ 16; *see also* Doc. No. 47.)

Sargent further states that, after delivering two closed-fist strikes, he "directed Mr. Bunch to place his hands behind his back[,]" but Bunch "refused and continued to use his hands to push off the ground." (Doc. No. 45-2, PageID# 253, ¶ 17.) Sargent states that he then "delivered a jab with [his] elbow to Mr. Bunch's facial area[,]" which "allowed . . . Spohn to gain control of Mr. Bunch's arm." (*Id.*; *see also* Doc. No. 47.) Sargent states that, at some point, C. Johnson "arrived and gained control of Mr. Bunch's feet." (Doc. No. 45-2, PageID# 254, ¶ 18.) Bunch states that he recalls Sargent "telling [him] to come on with [his] hands" and recalls telling Sargent that he could not "get [his] hands [out] from under [his] chest" because Sargent, Spohn, and C. Johnson were holding Bunch down. (Doc. No. 45-1, PageID# 228.) Bunch agrees that Sargent used his elbow to strike Bunch in the face. (Doc. No. 1.) Bunch states that Cole observed Sargent hitting him and that he spoke to Cole and J. Johnson about Sargent's use of force, but "[t]hey didn't want to hear [any]thing [Bunch] had to say about what was going on . . . ." (*Id.* at PageID# 227.)

In support of their motion for summary judgment, the defendants filed a video recording that captures some of these events.[4] (Doc. No. 45-3.) The video, which does not include audio, was taken by a camera located near the guard station in the common area of Bunch's housing pod. It shows Bunch standing in the far right corner of the room watching a television that is mounted above his head.[5] (*Id.*; Doc. No. 45-1.) Bunch is standing next to a round table with several stools attached and there are three other similar tables in the room. (Doc. No. 45-3.) Two tables are filled with incarcerated men sitting and talking. (*Id.*) Fisher, who is standing on the near right side of the room, walks past the tables with the other men and across the room to Bunch's table, where he steps onto a stool close to Bunch and the television. (*Id.*; Doc. No. 45-1.) Bunch steps onto a stool next to Fisher and, after a moment, punches Fisher in the face. (Doc. No. 45-3.) Fisher and Bunch jump to the floor where Fisher punches Bunch and the two men grapple with each other and continue to throw punches. (*Id.*)

Dale—who was standing near the guard station on the opposite side of the room when the first punch was thrown—begins to walk toward Fisher and Bunch, followed by Sargent who speaks into his radio as he crosses the room. (Doc. Nos. 45-1, 45-3.) The footage is blurry, but it appears that, when Dale and Sargent reach the other side of the room, they draw something from their belts

---

[4]     The Court may consider video evidence at the summary judgment stage. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (reversing denial of summary judgment and holding, based on video evidence, that a police officer did not use excessive force in ramming a fleeing suspect's car); *see also Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (considering video evidence in ruling on defendant's motion for summary judgment on detainee plaintiff's excessive force claim). Bunch has not alleged, and there is no indication, that the video footage submitted in this case "was doctored or altered in any way," nor has Bunch argued "that what it depicts differs from what actually happened." *Scott*, 550 U.S. at 378. Rather, Bunch asserts that the video footage shows "what [the defendants] did to [him]" and "speak[s] for itself[.]" (Doc. No. 53, PageID# 290.)

[5]     Bunch viewed this video during his deposition and identified himself, Fisher, Dale, Sargent, Spohn, C. Johnson, and Cole in the video footage. (Doc. No. 45-1.)

and hold their arms out toward Bunch and Fisher. (Doc. No. 45-3.) Bunch and Fisher continue fighting. (*Id.*) Several moments later, Sargent grabs Bunch and begins pulling him to the left side of the room while Dale grabs Fisher and pulls him to the right. (*Id.*) Bunch has grabbed onto Fisher's shirt and, as Sargent pulls him away from Fisher, Bunch pulls Fisher's shirt off. (*Id.*) Sargent continues to pull Bunch away, and Bunch continues to try to move towards Fisher. (*Id.*) Sargent holds Bunch and moves him toward the far left corner of the room. (*Id.*)

Around the time that Dale and Sargent separate Bunch and Fisher, Spohn enters the room and runs toward Sargent and Bunch. (*Id.*) Just before Spohn reaches them, Bunch puts an arm out toward the wall. (*Id.*) Spohn, who is on Bunch's left side, and Sargent, who is on Bunch's right side, take Bunch to the ground. (*Id.*) Sargent quickly bends his elbow and extends his arm, as though throwing a strike. (*Id.*) Around the time that Sargent and Spohn take Bunch to the ground, C. Johnson and Cole enter the room. C. Johnson runs toward Sargent, Spohn, and Bunch, while Cole walks towards the other incarcerated men who are still in the room watching these events unfold. (*Id.*)

The footage, which is blurry and partially obscured by a staircase, shows Spohn and Sargent kneeling on the ground near Bunch, who is not visible. (*Id.*) C. Johnson arrives and remains standing. (*Id.*) Spohn's and Sargent's upper bodies move as though they are in a struggle, but Bunch is hidden from view by the officers' bodies and the staircase for several seconds. (*Id.*) Eventually, Bunch extends his legs on the floor and C. Johnson holds Bunch's feet. (*Id.*) Bunch's torso remains hidden from view. (*Id.*) Spohn, Sargent, and C. Johnson remain clustered around Bunch, and Spohn and Sargent continue to move their upper bodies as though struggling. (*Id.*) Cole walks over, stands nearby for a few seconds, then walks away. (*Id.*) Roughly forty-five seconds after Spohn and Sargent take Bunch to the ground, Spohn, Sargent, and C. Johnson pull

Bunch to his feet. (*Id.*) Bunch's hands are handcuffed behind his back, and Sargent and Spohn walk him toward the camera and out of the room. (*Id.*)

Sargent states that, following this incident, and "[c]onsistent with [Davidson County Sheriff's Office] policy, Mr. Bunch was taken to the medical unit that cleared him of any injuries." (Doc. No. 45-2, PageID# 254, ¶ 22; *see also* Doc. No. 47.) The defendants have submitted a photograph of Bunch taken after the incident as an exhibit in support of their motion for summary judgment (Doc. No. 45-4) and assert that it shows no visible injuries to Bunch (Doc. No. 45-2). Bunch states that his "eye ha[s] been kind of messed up a lot since . . . the incident happened." (Doc. No. 45-1, PageID# 216.)

## B. Procedural History

Bunch filed a verified complaint on August 14, 2018, alleging that Defendants Dale, Sargent, Spohn, C. Johnson, Cole, and J. Johnson used excessive force against him in violation of his constitutional rights and are liable for damages in their individual and official capacities. (Doc. No. 1.) The Court granted Bunch's application to proceed *in forma pauperis* and screened his complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, finding that Bunch had stated colorable claims for excessive force against each defendant in his or her individual capacity but dismissing Bunch's official capacity claims against all defendants. (Doc. No. 4.) In light of Bunch's *in forma pauperis* status, the Court instructed the Clerk of Court to send Bunch service packets—consisting of a blank summons and a form used by the U.S. Marshals Service to effect service—and ordered Bunch to return a completed service packet for each defendant. (*Id.*) Bunch eventually returned completed service packets for Sargent, Spohn, C. Johnson, Cole, and J. Johnson and summonses issued as to those defendants, but Bunch did not return a service packet for Dale despite warnings that failure to do so could lead to a recommendation that his claims against Dale be dismissed. (Doc. No. 7.) The Magistrate Judge therefore recommended that the Court dismiss Bunch's claims

7

against Dale without prejudice under Federal Rule of Civil Procedure 41(b). (Doc. No. 15.) Bunch did not object to the Magistrate Judge's report and recommendation, and the Court dismissed Dale as a defendant on March 27, 2019. (Doc. No. 24.)

Defendants Sargent, Spohn, C. Johnson, Cole, and J. Johnson answered Bunch's complaint on March 15, 2019.[6] (Doc. No. 22.) The Court entered a scheduling order (Doc. No. 25), and the parties engaged in discovery. On December 13, 2019, the defendants timely filed a motion for summary judgment, supported by a memorandum of law, a statement of undisputed material facts, and several exhibits, including Bunch's deposition testimony, Sargent's declaration, a video of the events in question, and a photograph of Bunch taken after those events.[7] (Doc. Nos. 45–47.) The defendants argue that they are entitled to summary judgment under the doctrine of qualified immunity because Bunch cannot show that any of them violated his clearly established constitutional rights. (Doc. No. 46.) They further argue that, in his deposition testimony, Bunch conceded that he is not challenging Sargent's use of chemical spray or Sargent's, Spohn's, and C. Johnson's use of body weight to hold him down as unconstitutional uses of force, and that Bunch's claims against Cole and J. Johnson are based only on their status as supervisors. (*Id.*)

The Court ordered Bunch to file any response in opposition to the defendants' motion within twenty-eight days of being served with it. (Doc. No. 49.) Bunch did not do so. In light of his incarceration and pro se status, the Court afforded Bunch the opportunity to show cause by February 26, 2020, why the Court should not grant the defendants' motion for summary judgment or, in the alternative, dismiss Bunch's claims for failure to prosecute. (Doc. No. 52.) On February

---

[6]     These defendants filed a motion for summary judgment on January 22, 2019 (Doc. No. 10), but withdrew that motion on March 15, 2019, before filing their answer (Doc. Nos. 21, 23).

[7]     The Court previously granted the defendants' motion to extend the dispositive motion deadline from December 1, 2019, to December 13, 2019. (Doc. No. 44.)

12, 2020, the Court received a letter from Bunch stating that the video evidence submitted by the defendants shows "what [the defendants] did to [him]" and that Bunch would "like to be reward[ed] for what happen[ed] . . . ." (Doc. No. 53, PageID# 290.) The Court construes this filing as Bunch's response in opposition to the defendants' motion for summary judgment. The defendants filed a reply on February 19, 2020, arguing that Bunch failed to respond to their statement of undisputed material facts and failed to point to any specific record evidence showing that the defendants are not entitled to qualified immunity. (Doc. No. 54.) On February 27, 2020, the Court received another filing from Bunch stating that he "was slow [to] respond" because he was being held "in the hole" without access to legal materials; that Defendant "Sargent hit [Bunch] with closed fist strikes while [he] was on the ground with [his] hands under [him] and other officers [were] holding [him] down . . ."; and that he "included Chief [J.] Johnson and Lt. Cole as defendants [in this action] because they are supervisors with high rank and they over look this matter." (Doc. No. 55, PageID# 297.) The defendants have not objected to Bunch's second filing and, in light of Bunch's pro se status, the Court will consider this filing in deciding the defendants' motion for summary judgment.

## II.        Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts "need consider only the cited materials, but . . . may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The record evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences drawn in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

10

## III.     Analysis

"Section 1983 provides a civil enforcement mechanism for all inmates [and pretrial detainees] who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a claim under § 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Here, Bunch alleges that Sargent, Spohn, C. Johnson, Cole, and J. Johnson used excessive force against him, depriving him of his right under the Fourteenth Amendment's Due Process Clause to be free from any use of force that amounts to punishment.[8] (Doc. No. 1.) Specifically, Bunch argues that Sargent and Spohn slammed him to the ground; that Spohn and C. Johnson held him down while Sargent punched him twice and elbowed him in the face; and that Cole and J. Johnson are supervisors who failed to stop these uses of force.[9]

---

[8]     Bunch's complaint cites the Eighth Amendment's prohibition on cruel and unusual punishment as the basis for his claims (Doc. No. 1); however, because Bunch was a pretrial detainee and not a convicted prisoner at the time he experienced the alleged excessive force, his claims are analyzed under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (holding that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment" (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

[9]     Bunch has not disputed the defendants' assertion that, based on his deposition testimony, Bunch has conceded that Sargent's use of chemical spray to stop the fight with Fisher and Spohn's and C. Johnson's use of body weight to hold Bunch down were reasonable uses of force. Rather, Bunch's surreply confirms that his claims against Sargent arise from Sargent "hit[ting] [Bunch] with closed fist strikes while [he] was on the ground with [his] hands under [him] and other officers [were] holding [him] down . . ."; that Spohn and C. Johnson are "a[ ] part of this matter" because they were "holding . . . Bunch down while . . . Sargent was assau[]lt[ing] him . . ."; and that Bunch "included Chief [J.] Johnson and Lt. Cole as defendants because they are supervisors with high rank and they over look this matter." (Doc. No. 55, PageID# 297.) The Court therefore finds that

The defendants have raised qualified immunity as an affirmative defense to Bunch's claims. (Doc. No. 46.) "The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Thai*, 707 F.3d 675, 680 (6th Cir. 2013). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Where, as here, defendants invoke qualified immunity and carry their initial summary judgment burden, "the plaintiff bears the burden to show that qualified immunity is inappropriate." *Quigley*, 707 F.3d at 681.

To demonstrate that the defendants used excessive force against him in violation of his Fourteenth Amendment rights, Bunch "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). In determining whether Bunch has met that standard, the Court must consider "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397. The Court "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alterations in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). The Supreme Court

---

Bunch has conceded any claims of excessive force based on Sargent's use of chemical spray or Spohn's and C. Johnson's use of body weight.

has set forth several factors "to illustrate the types of objective circumstances potentially relevant to a determination of excessive force" in this context, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Even if Bunch can show a genuine question of material fact as to whether the defendants violated his constitutional rights, they would still be entitled to qualified immunity if those rights were not clearly established at the time of violation. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In other words, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The precedent clearly establishing a right can be in the form of a case of 'controlling authority or a robust consensus of cases of persuasive authority.'" *Latits v. Phillips*, 878 F.3d 541, 552 (6th Cir. 2017) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)).

### A.     Local Rule 56.01 and the Defendants' Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion

13

for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Furthermore, "[t]he response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." *Id.* Pro se parties are not excused from complying with these rules. *See* M.D. Tenn. R. 56.01(b)–(c). Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 25, PageID# 134); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

The defendants filed a statement of undisputed material facts that complies with the requirements of Local Rule 56.01(b) and includes citations to Sargent's declaration, Bunch's deposition, and the video footage submitted as part of the summary judgment record. (Doc. No. 47.) In ordering Bunch to show cause why the defendants' motion for summary judgment should not be granted, the Court again warned Bunch of the potential consequences of failing to respond to the defendants' assertions of undisputed material fact. (Doc. No. 52.) Bunch filed a letter in response to the Court's show-cause order, but he did not respond to the defendants' statement of undisputed material facts as required by Local Rule 56.01(c). The defendants

therefore argue that the facts asserted in their statement must be taken as undisputed for purposes of summary judgment under Local Rule 56.01(f). (Doc. No. 54.)

The defendants are correct that Local Rule 56.01(f) requires the Court to take an unaddressed asserted undisputed fact as true, and the Court takes the defendants' asserted undisputed facts not addressed by Bunch as true here. However, Bunch's failure to specifically respond to the defendants' statement of undisputed material facts does not automatically entitle the defendants to summary judgment. The defendants still must carry their initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2020). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (3d ed. 2020). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to

the opposing party."); *see also Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) (viewing defendant's summary judgment evidence in light most favorable to plaintiff, finding it insufficient, and affirming, in part, district court's denial of summary judgment). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Adickes*, 398 U.S. at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also Evans*, 687 F. App'x at 446 (affirming, in part, denial of summary judgment where cited video evidence was insufficient to satisfy defendant's initial burden and plaintiff's opposition did not address that evidence); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2020) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

### B. Bunch's Excessive Force Claims

#### 1. Grabbing Bunch and Taking Him to the Ground

Bunch alleges that Sargent, Spohn, and C. Johnson used excessive force when they grabbed him and took him to the ground. (Doc. No. 45-1.) There is no dispute that Bunch was engaged in a fist fight with Fisher before all of the uses of force challenged in this action. (Doc. Nos. 45-1– 45-3, 47.) The defendants assert in their statement of undisputed material facts that Bunch and Fisher "did not stop . . . fighting" after "Dale and Sargent used their chemical spray" and that "Bunch refused commands to stop fighting and continued to try and push through Corporal Sargent to continue fighting with Mr. Fisher[.]" (Doc. No. 47, PageID# 278, ¶¶ 4, 5.) They further assert that "Sargent feared for his own safety and the safety of his co-workers during the incident with Mr. Bunch." (*Id.* at PageID# 278, ¶ 7.) The defendants assert, based on record evidence, that "Sargent and Spohn did not slam Mr. Bunch to the floor" and that "Bunch did not have any injuries after the use of force." (*Id.* at PageID# 278–79, ¶¶ 6, 10.) Moreover, the video footage (Doc.

No. 45-3) clearly shows that C. Johnson had not yet reached Bunch when Sargent and Spohn took Bunch to the ground. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Viewing these asserted facts and the record evidence as a whole in the light most favorable to Bunch, and considering the *Kingsley* factors, the Court finds that Sargent, Spohn, and C. Johnson have carried their initial burden to show an absence of any genuine dispute of material fact that the force used to take Bunch to the ground after his fight with Fisher was objectively reasonable. Bunch was engaged in a violent fist fight with another incarcerated person in a common area where others were present; Sargent commanded Bunch to stop fighting and sprayed him with a chemical agent, but Bunch continued to fight with Fisher; Sargent perceived Bunch's behavior as a safety threat; Sargent and Spohn did not slam Bunch to the ground; and Bunch did not suffer any injury from being grabbed and taken to the ground. *See Kinglsey*, 576 U.S. at 397.

Bunch has not pointed to any specific record evidence showing a genuine issue for trial. The Court twice warned Bunch that failure to specifically respond in opposition to the defendants' assertions of undisputed material fact could result in those facts being taken as undisputed for purposes of summary judgment. (Doc. Nos. 25, 52.) Nevertheless, Bunch failed to respond to the defendants' statement of undisputed material facts as required by the Local Rules and, under Local Rule 56.01(f), the Court must therefore assume that the defendants' assertions are undisputed for purposes of summary judgment. *See* M.D. Tenn. R. 56.01(f) (failure to respond). Bunch's assertion during his deposition that he "wasn't resisting" when Sargent, Spohn, and C. Johnson grabbed him and "[s]lammed [him] down" is therefore insufficient to create a genuine question of material fact

as to whether the officers' actions in taking him to the ground were objectively unreasonable. (Doc. No. 45-1, PageID# 226.)

Further, the Sixth Circuit has held that courts must give prison officials "wide-ranging deference" in analyzing an official's decision to use force to control a prison disturbance:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (alteration in original) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). Sargent, Spohn, and C. Johnson are therefore entitled to qualified immunity on Bunch's excessive force claims related to being grabbed and taken to the ground.

### 2. Sargent's Closed-Fist Strikes and Elbow Jab

It is undisputed that Sargent struck Bunch three times after Bunch was on the ground, twice with his closed fist and once with his elbow. (Doc. Nos. 45-1, 47.) The only questions before the Court are if there are genuine issues for trial regarding (1) whether these strikes were constitutional uses of force under the circumstances and, if they were not, (2) whether it was clearly established that the force used was unconstitutional. Sargent argues that his use of force was constitutional because the strikes were objectively reasonable under the circumstances and, in the alternative, that they did not amount to more than *de minimis* force. (Doc. No. 46.) Bunch maintains that the strikes were unnecessary because he was not resisting the officers' efforts to subdue him; instead, he states that his arms were pinned underneath his chest and he could not move them to comply with the officers' commands to give them his hands. (Doc. No. 45-1.)

In analyzing excessive force claims under the Fourth Amendment, the Sixth Circuit has held that it is objectively reasonable for officers to use some degree of force to subdue a suspect who is resisting arrest. *See Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (holding that "it is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest"). Correspondingly, the Sixth Circuit has "consistently held that various types of force applied *after* the subduing of a suspect are unreasonable and a violation of a clearly established right." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (emphasis added). The same standard applies to excessive force claims under the Fourteenth Amendment brought by pretrial detainees, like Bunch. *See Clay v. Emmi*, 797 F.3d 364, 369 (6th Cir. 2015) (recognizing that, under *Kingsley*, "the same objective standard" used to resolve excessive force claims brought under the Fourth Amendment also applies to excessive force claims brought under the Fourteenth Amendment). The Court must therefore examine the record evidence to determine if there is a genuine question of material fact regarding whether Bunch was subdued or incapacitated at the time of each of Sargent's three strikes.

As explained above, the defendants' statement of undisputed material facts includes assertions that, before he was taken to the ground, Bunch was "involved in an altercation" with Fisher; "did not stop . . . fighting" even after "Dale and Sargent used their chemical spray on [him] . . ."; "refused commands to stop fighting[;] and continued to try and push through . . . Sargent to continue fighting with Mr. Fisher[.]" (Doc. No. 47, PageID# 277–78, ¶¶ 2, 4, 5.) The video footage, viewed in the light most favorable to Bunch, supports these assertions. (Doc. No. 45-3.) Sargent asserts in the defendants' statement of undisputed material facts that he "feared for his own safety and the safety of his co-workers during the incident with Mr. Bunch[.]" (Doc. No. 47, PageID# 279, ¶ 7.) Sargent's declaration in support of summary judgment states that he "threw

two closed fist strikes" at Bunch after Bunch was on the ground because of this fear and because of "the violence of the inmate fight" and "Bunch's refusal and resistance[.]" (Doc. No. 45-2, PageID# 253, ¶ 16.) Sargent further asserts, in the defendants' statement of undisputed material facts, that "he used an elbow j[a]b to stop Mr. Bunch from using his hand to push off the ground." (Doc. No. 47, PageID# 279, ¶ 9.) Finally, the defendants assert in their statement of undisputed material facts that "Bunch did not have any injuries after the use of force." (*Id.* at PageID# 279, ¶ 10.)

Viewing these assertions and the record evidence as a whole in the light most favorable to Bunch—and considering the *Kingsley* factors and the deference due to prison officials' decisions in this context—the Court finds that Sargent has carried his initial burden to show that the two fist strikes and the elbow strike were objectively reasonable uses of force under the totality of the circumstances. In the seconds leading up to Sargent striking Bunch, Bunch was exchanging his own closed-fist blows with Fisher; refusing Sargent's commands to stop fighting; continuing to fight after being sprayed with a chemical agent; and resisting Sargent's efforts to physically separate him from Fisher. After taking Bunch to the ground with Spohn's assistance, Sargent threw two closed-fist strikes; he then used an elbow jab to prevent Bunch from pushing up with his hands. Bunch did not suffer any injuries from Sargent's use of force.

Bunch has not pointed to any specific record evidence sufficient to raise a genuine question of material fact about whether Sargent's closed-fist strikes and elbow jab were objectively unreasonable under the circumstances. Because Bunch failed to respond to the defendants' statement of undisputed material facts, the Court must deem those assertions undisputed for purposes of summary judgment. *See* M.D. Tenn. R. 56.01(f) (failure to respond). The defendants' statement of undisputed material facts includes the assertion that Bunch was "using his hand to

push off the ground" when Sargent delivered the elbow jab. (Doc. No. 47, PageID# 279, ¶ 9.) This kind of physical struggle while Sargent, Spohn, and Johnson were attempting to subdue and handcuff Bunch following the fight with Fisher constitutes resistance. *See Rudlaff*, 791 F.3d at 641 ("Active resistance includes 'physically struggling with, threatening, or disobeying officers.'" (quoting *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012))). There is therefore no genuine dispute of material fact for purposes of summary judgment that Sargent's elbow jab was objectively reasonable under the circumstances.

With respect to Sargent's two punches, the Court notes that Sargent's assertion that Bunch was resisting the defendants' efforts to restrain him on the ground before Sargent threw the two closed-fist strikes appears only in Sargent's declaration and not in the defendants' statement of undisputed material facts. (Doc. Nos. 45-2, 47.) Local Rule 56.01(f) therefore does not apply for purposes of determining whether this assertion is disputed. Bunch has testified that he was not resisting on the ground before Sargent punched him and that he could not move his arms because they were pinned under his chest. (Doc. No. 45-1.) The video footage shows Sargent and Spohn moving in what looks like a struggle with Bunch, but Bunch is not clearly visible. (Doc. No. 45-3.) The Court finds that, even assuming that Bunch could not move his arms because they were pinned under his body, Sargent's two closed-fist strikes were objectively reasonable under the totality of the circumstances because Bunch's hands—which he had just used to repeatedly punch Fisher—were not yet handcuffed. *Cf. Rudlaff*, 791 F.3d at 641 (holding that "[a]ctive resistance . . . includes refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance"); *Williams v. Ingham*, 373 F. App'x 542, 548 (6th Cir. 2010) (affirming district court's finding that defendant officer's use of force was objectively reasonable where plaintiff suspect "continued to struggle to hold his hands under his body and would not

show them to the officers" and defendant officer "delivered two closed-fist blows to [the suspect's] middle back" before using a taser). Moreover, it remains undisputed for purposes of summary judgment that Bunch did not suffer any injury from Sargent's strikes.

Regarding Sargent's argument that his three blows to Bunch were nothing more than *de minimis* force, the Court notes that the cases on which Sargent relies addressed only open-hand strikes and pushes or shoves, not closed-fist strikes and elbow jabs. (Doc. No. 46.) While courts in this circuit have found that, "[g]enerally, a single isolated push, shove, punch, or blow by a prison guard or police officer using *de minimis* force does not rise to the level of a violation of the United States Constitution[,]" this Court declines to extend that principle here to include two punches and an elbow jab. *Moher v. United States*, 875 F. Supp. 2d 739, 758 (W.D. Mich. 2012); *see also Jones v. Lee*, No. 2:09-CV-11283, 2012 WL 683362, at *5 (E.D. Mich. Mar. 2, 2012) (finding that a single "punch which caused nothing more than a bruise constitutes a *de minimis* use of force").

Nevertheless, because there is no genuine dispute of material fact that Sargent's strikes were objectively reasonable under the circumstances, he is entitled to qualified immunity.

### 3. Spohn's and C. Johnson's Restraint of Bunch

Bunch's excessive force claims against Spohn and C. Johnson stem from the fact that they were holding Bunch down when Sargent struck him. (*See* Doc. No. 55, PageID# 297 ("The defendants that [were] with . . . Sargent [were]holding . . . Bunch down while . . . Sargent was assau[]lt[ing] him so that make[s] them a[ ]part of this matter.").) It is undisputed that "Spohn and [C.] Johnson did not use any closed hand strikes" while holding Bunch down. (Doc. No. 47, PageID# 279, ¶ 11.) The Court finds that Spohn and C. Johnson have carried their initial burden to show that the force they used to hold Bunch down was objectively reasonable under the circumstances. Bunch has not pointed to any specific record evidence sufficient to create a genuine dispute of material fact regarding his excessive force claims against Spohn and C. Johnson.

22

Instead, he appears to argue that Spohn and C. Johnson should be found liable for failing to protect him from Sargent's use of excessive force. (Doc. No. 55.) This argument is likewise insufficient to create a genuine issue for trial because, as explained above, there is no genuine dispute of material fact that Sargent's use of force against Bunch was objectively reasonable under the circumstances. Spohn and C. Johnson are therefore entitled to qualified immunity for their respective actions to restrain Bunch on the ground.

### 4. Cole's and J. Johnson's Supervisory Roles

Finally, it is undisputed that Bunch's excessive force claims against Cole and J. Johnson stem only from their roles as "supervisors with high rank" who oversaw Sargent, Spohn, and C. Johnson. (Doc. No. 55, PageID# 297; *see also* Doc. No. 47.) Cole and J. Johnson are correct that, under this circuit's precedent, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "'[A]t a minimum,' the plaintiff must show that the defendant [supervisor] 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Peatross*, 818 F.3d at 242 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Here, as explained above, Bunch has not pointed to any record evidence sufficient to establish a genuine issue for trial regarding whether Sargent, Spohn, or C. Johnson violated his constitutional rights. He therefore cannot show that Cole or J. Johnson "'implicitly authorized, approved, or knowingly acquiesced in . . . unconstitutional conduct . . . .'" *Id.* Consequently, Cole and J. Johnson are entitled to qualified immunity and summary judgment on Bunch's excessive force claims against them as a matter of law.

**IV.     Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that the Court GRANT the defendants' motion for summary judgment (Doc. No. 45) and enter judgment in their favor.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 29th day of June, 2020.

ALISTAIR E. NEWBERN
United States Magistrate Judge